UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

In re:                                                                        Case No. 812-76181-reg
                                                                              Chapter   11

      EAST END DEVELOPMENT, LLC,

                       Debtor.

-----------------------------------------------------------------------x

### *Memorandum Decision*

Before the Court is a motion ("Motion") by 21 West Water Street Holdings, Inc. ("21 West") to dismiss the Chapter 11 petition filed by East End Development LLC (the "Debtor"). 21 West, a fifty percent interest holder of the Debtor, claims that MM Sag Harbor LLC ("MM Sag Harbor"), acting as the managing member of the Debtor, lacked the requisite authority to file a petition in bankruptcy without the consent of 21 West, and in the alternative that the petition should be dismissed as a bad faith filing pursuant to 11 U.S.C. § 1112(b). MM Sag Harbor takes the position that the petition was not filed in bad faith, and the Operating Agreement gives the managing member the authority to file a bankruptcy petition without the prior consent of 21 West. Several creditors claiming to have mechanic's liens on the Debtor's property have joined the request for dismissal of the Debtor's petition on the basis that the petition was filed without proper authority, and that this is a bad faith filing.

Based on a reading of the Operating Agreement and a review of applicable law, the Court concludes that as the managing member, MM Sag Harbor had full authority to file the subject petition. Although the Operating Agreement does contain some inconsistencies, it does not grant explicit authority to the managing member to file for bankruptcy relief, the Operating Agreement

vests MM Sag Harbor with broad powers to manage the Debtor's operations.  There are very few exceptions to this expansive grant of authority.  These exceptions include commencing dissolution proceedings, winding up the Debtor and liquidating the Debtor.   The act of filing for bankruptcy relief is not among the enumerated events requiring the consent of 21 West. The Court must decide whether to accept the Operating Agreement as drafted without grafting on additional restrictions or powers, or read the Operating Agreement in a manner to include a restriction on the filing of a bankruptcy petition as an additional event requiring the consent of the movant.  This Court does not believe it is within its power to amend the language of the Operating Agreement, which provides a comprehensive recitation of the parties' rights and responsibilities.   To do so would arbitrarily limit the full rights granted to the managing member and would be inconsistent with the express terms of the Operating Agreement.  The Court also finds insufficient evidence of bad faith to dismiss the Debtor's petition. The failure to obtain the consent of 21 West prior to filing the petition did not violate the Operating Agreement, and although the members of MM Sag Harbor and the lender stand to benefit from the bankruptcy, this does not establish bad faith on the part of the Debtor as a matter of law.   The Debtor was in financial distress at the time the petition was filed, and the Debtor has filed a proposed plan that attempts to satisfy the claims of the Debtor's creditors.   The internecine disagreements between the members of the Debtor that arose prepetition are not relevant to this analysis and do not constitute cause to dismiss this case.

### *Facts*

The Debtor is a New York Limited Liability Company comprised of two members; MM Sag Harbor (the "Managing Member") which holds a 50% interest in the Debtor, and 21 West, which holds the other 50% interest.  The Debtor's management and operations are governed by

the Operating Agreement dated June 8, 2006, and effective as of October 17, 2005.  The

Debtor's business consists of owning and developing certain real property located in Sag Harbor,

New York into a 19 unit luxury residential condominium building (the "Property").  Prepetition,

Amalgamated Bank, as trustee of Longview Ultra Construction Loan Investment Fund

("Amalgamated") extended loans in the aggregate approximate amount of $32,061,312.41.  The

loans are secured by three mortgages consisting of a project mortgage, a senior mortgage and a

building mortgage.  The Debtor defaulted under the loan obligations to Amalgamated, and

Amalgamated commenced a foreclosure action against the Debtor on August 18, 2011. The

Debtor and Amalgamated engaged in discussions to restructure the obligations, which were

unsuccessful.  Thereafter, by letter dated April 4, 2012, counsel for the Debtor advised counsel

for 21West that the Debtor intended to file for bankruptcy.  On October 12, 2012, the Debtor

filed the petition for relief under Chapter 11.  The Corporate Resolution annexed to the petition

indicates that a meeting of the managers of the Debtor was held on October 12, 2012, and that

the Debtor authorized Emil Talel, as one of the managing members of MM Sag Harbor, to

execute the documents and take any action necessary in connection with the filing.  Nicola

Tuosto and Paul Fiore, the two members of 21 West, were served with notice of the bankruptcy

at their last known address according to the books and records of the Debtor.

     The Operating Agreement contains a series of provisions related to the Managing

Member's authority to act on behalf of the Debtor.  Section 4.1 provides:

> Unless otherwise expressly provided in this Agreement or required by law,
> the Members shall not have the right to vote on any matter and agree that the
> Managing Member shall make all decisions on behalf of, and with respect to, the
> [Debtor] and its business; however, in its sole discretion, the Managing Member
> may submit any matter to the vote of all of the Members.

Section 5.4 provides that subject to Section 5.4 of the Operating Agreement and other provisions of the Operating Agreement, the Managing Member shall manage the "business and affairs" of the Debtor and shall "have all necessary powers to carry out the business of the [Debtor]." The Managing Member's powers include, but are not limited to, the power to cause the Debtor to acquire, own, operate, manage, develop, maintain, the Debtor's assets, to sell the condominium units "or otherwise sell all or any part of the Properties and other . . . Assets of the [Debtor] . . . upon such terms and conditions as the Managing Member from time to time may determine", the power "to bring or defend, settle, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the [Debtor]", and the power "to perform any and all acts it deems necessary or appropriate for the protection and preservation of the [Debtor's assets and property]."

Section 5.5 of the Operating Agreement provides that "[e]xcept as expressly provided in this Agreement, the consent of the Members shall not be required for any actions to be taken or decision to be made by the Managing Member, on behalf of the [Debtor]." The Operating Agreement does not specifically address bankruptcy but contains the following relevant language, which restricts the Managing Member's authority:

> 5.4(b)  The [Debtor] shall have all powers necessary or advisable, convenient, incidental or appropriate for the accomplishment of the [Debtor's] purposes set forth above, including all powers which may be exercised by the Members on behalf of the [Debtor] pursuant to, and subject to the terms of, this Agreement.
>
> Notwithstanding any of the foregoing, the consent of a Majority of the Membership Interests[1] shall be required for any of the following actions by the [Debtor];

---

[1] Because there are only two members of the Debtor with each holding a 50% interest, unanimous consent is actually required for the acts listed.

1. Any agreement to be entered into by the [Debtor] with the Managing Member or any person or entity affiliated in anyway [sic] with the Managing Member;
2. Any action to dissolve, wind-up, or liquidate the [Debtor], except as set forth in Article XII herein;
3. Any action to cause the [Debtor] to merge, consolidate or acquire substantially all the assets of another person or entity;
4. Any action to permit the [Debtor] to admit any new Member unless such action does not result in a dilution of the Member's Percentage Interest.

The Operating Agreement also provides that the consent of the majority of the members is required for incurring marketing expenses, or any borrowing after the initial construction loan. How 21 West's consent is to be manifested is not specified in the Operating Agreement.

Article XII concerns the termination and dissolution of the Debtor, and does not include any reference to the filing of a petition in bankruptcy by the Debtor. Pursuant to Article XII, termination and dissolution of the Debtor are triggered by certain enumerated events, or upon the consent of a majority in interest of the members. The Debtor is to be liquidated, and the proceeds are to be distributed pursuant to the scheme set forth in the Operating Agreement.

Section 15.2 of the Operating Agreement provides as follows:

In no event shall any Person dealing with the Managing Member or their representatives with respect to any property of the [Debtor] be obligated to ascertain that the terms of this Agreement have been complied with, or be obligated to inquire into the necessity or expediency of any act or action of the Managing Member or their representatives, and every contract, agreement, deed, mortgage, promissory note, or other instrument or document executed by the Managing Member with respect to any property of the [Debtor] shall be conclusive evidence in favor of any and every person relying thereon or claiming thereunder that (i) at the time of the execution and/or delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement; and (iii) the Managing Member executing the same or his or her representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the [Debtor].

In the roughly four months between the petition date and the date 21 West first appeared in this case, the Debtor has obtained DIP financing from Amalgamated, and has

filed a proposed plan and disclosure statement.  The proposed plan provides for an auction sale of the Property, with Amalgamated credit bidding the amount of its secured claim.  The disclosure statement has been approved, subject to further amendment, and a hearing on confirmation of the Debtor's proposed plan will be scheduled shortly.

### *Discussion*

21 West seeks to dismiss the Debtor's petition, alleging that (1) the Managing Member lacked authority to file the petition because it failed to obtain the consent of 21 West as it believes was required by the Operating Agreement, and (2) the petition was filed in bad faith pursuant to 11 U.S.C. § 1112(b).

### *1.  Authority to File Petition*

As a threshold issue, the Court must determine whether the Managing Member possessed the requisite authority to file the petition in bankruptcy on behalf of the Debtor.   The Supreme Court has opined that with respect to corporations, the entity vested with "the power of management" has the requisite authority to file a bankruptcy petition.  *Price v. Gurney*, 324 U.S. 100, 104, 65 S. Ct. 513, 89 L.Ed. 776 (1945).  State law governs whether a business entity is authorized to file a petition in bankruptcy.  *In re Am. Globus Corp*., 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Or. 2003). Therefore, if the Managing Member did not have the authority to file the petition pursuant to applicable state law, then the Debtor's case is subject to dismissal.  *In re Raljoed Realty Co*., 277 F. Supp. 225, 226 (S.D.N.Y. 1967) *aff'd per curiam sub nom.  In re Park Towers Corp*., 387 F.2d 948, 967 (2d Cir. 1967). The Debtor is a New York limited liability company, and

resolution of this issue is governed by New York state law.  Under New York Limited Liability

Company Law, the LLC's operating agreement governs the parties' conduct.  To the extent the

agreement is silent, there are default provisions in the New York Limited Liability Company

laws that apply.  *Overhoff v. Scarp, Inc*., 12 Misc.3d 350, 359, 812 N.Y.S.2d 809 (N.Y. Sup. Ct.

2004).

Under New York law, interpretation of the Operating Agreement is governed by several

constructs:

> 'It is the primary rule of construction of contracts that when the terms of a
> written contract are clear and unambiguous, the intent of the parties must be found
> within the four corners of the contract, giving practical interpretation to the
> language employed and the parties' reasonable expectations.'  *Howard v.
> Howard*, 292 A.D.2d 345, 345, 740 N.Y.S.2d 71 (2d Dep't 2002).  'Evidence
> outside the four corners of the document as to what was really intended but
> unstated or misstated is generally inadmissible to add or vary the writing.'
> *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 566
> N.E.2d 639 (1990).  That said, in analyzing contractual test, a court need not turn
> a blind eye to context. Rather, 'a court should accord [contractual] language its
> plain meaning giving due consideration to 'the surrounding circumstances [and]
> apparent purpose which the parties sought to accomplish.''  Thompson v. Gjivoje,
> 896 F.2d 716, 721 (2d Cir. 1990) (quoting *William C. Atwater & Co., v. Panama
> R.R. Co*., 246 N.Y. 519, 524, 159 N.E.418 (1927) (second alteration in original)).
> 'A written agreement that is clear, complete and subject to only one reasonable
> interpretation must be enforced according to the plan meaning of the language
> chosen by the contracting parties.'  *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l
> Ins. Co.*, No. 09 Civ. 1796 (GBD), 2012 WL 3890128, at *5 (S.D.N.Y. Sept. 7,
> 2012 (citation omitted).

*In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013).

The Operating Agreement, while granting broad powers to the Managing Member, is

silent as to whether the Managing Member has authority to file a petition in bankruptcy on behalf

of the Debtor without the consent of 21 West.  Likewise, the New York LLC laws do not specify

what type of consent is required by the members of an LLC prior to filing a petition in

bankruptcy.

21 West urges the Court to fill in perceived blanks in the Operating Agreement by inserting a provision regarding the type of authorization needed prior to filing a petition in bankruptcy. According to 21 West, the failure to identify the decision to file a petition in bankruptcy as one that requires the consent of both members is an oversight, which the Court may correct. Because the decision to file a petition in bankruptcy is akin to a decision to wind-up, liquidate or dissolve the Debtor, which requires the consent of both members pursuant to section 5.4(b)2 of the Operating Agreement, the consent of both members should be required prior to filing for bankruptcy relief. Since the Managing Member never obtained the consent of 21 West, it argues that the petition should be dismissed as a matter of law.

The Court finds that the Operating Agreement is not a bare-bones document that requires this Court to read additional terms into the text. The Operating Agreement sets forth in detail the Managing Member's authority to act on behalf of the Debtor. The Operating Agreement confers broad powers upon the Managing Member to act on behalf of the Debtor, and the examples set forth in the Operating Agreement are merely illustrative. In contrast, the actions for which the Managing Member must obtain the consent of 21 West are narrow and specific. The Operating Agreement consistently confers upon the Managing Member the authority to take many acts, whether day-to-day, or one solitary act, in order to preserve the value of the Debtor's assets and to further its business operations. The Operating Agreement is clear and unambiguous, and there are no grounds in this case to speculate whether the parties meant to include the act of filing bankruptcy as one of the events requiring the consent of 21 West.

21 West relies on *In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Ore. 2003) to support its argument that this Court should "graft onto" the Operating Agreement the requirement of consent prior to filing a petition in bankruptcy. However the facts of *In re Avalon*

*Hotel Partners, LLC* are inapposite to this case.  There, the relevant operating agreement set forth a nonexclusive list of items called "Major Decisions" which required the consent of 75% of its members.  The court found that because a decision to file for bankruptcy was outside the ordinary course of business, it was equivalent to a "Major Decision" and consent of a majority of its members was required.  In our case, the list of actions requiring consent is clear, specific and limited.  The filing of a bankruptcy petition is not equivalent to liquidation or dissolution.   The terms "liquidation" and "dissolution" refer to transactions which are "statutory in nature, and typically have a precise statutory meaning under the applicable corporation law of a particular jurisdiction."  *See Prescott, Ball & Turben v. LTV Corp.*, 531 F. Supp. 213, 219 (S.D.N.Y. 1981).   Pursuant to § 701 of the New York LLC law, dissolution is to occur as provided in the relevant operating agreement.  The Operating Agreement provides for dissolution of the Debtor upon the occurrence of specific events, and upon dissolution of the Debtor, the Debtor's assets are to be liquidated.   The procedures for termination and dissolution of the Debtor are set forth in Article XII of the Operating Agreement, and result in the winding up of the Debtor as a functioning entity.

Pursuant to § 102(d) of the New York LLC law, "bankruptcy" is defined as bankruptcy under the U.S. Bankruptcy Code, or applicable state insolvency statute.  Liquidation is not synonymous with bankruptcy and the Court will not equate the two for the purposes of including bankruptcy as an event requiring the consent of 21 West.  If anything, the act of filing for bankruptcy is more equivalent to an act to "bring or defend, settle, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the [Debtor]" which the Managing Member is expressly permitted to do.

The Operating Agreement contains other provisions regarding the effect of bankruptcy by a member of the Debtor and the parties could, but did not, restrict the Managing Member's authority to file a petition in bankruptcy on behalf of the Debtor.  Even if the Court were to turn to New York LLC law to fill in a perceived omission in the Operating Agreement, there is no specific provision in the law concerning the decision to file for bankruptcy.   Based on the language of the Operating Agreement, and the clear intent to give the Managing Member broad authority to act on behalf of the Debtor and to bind third parties with respect to the Debtor, the Court finds that the Managing Member had the authority to file the petition for relief under Chapter 11.

2.   ***Bad Faith Allegations***

21 West also seeks dismissal of the case pursuant to Bankruptcy Code § 1112(b) on the grounds that this is a bad faith filing.  According to 21 West, reorganization of the Debtor is objectively futile because the petition was not properly authorized, and the Debtor filed this case to benefit Amalgamated and the members of MM Sag Harbor, not the Debtor.  21 West points to the prepetition conduct of MM Sag Harbor as evidence of bad faith, including the failure to obtain the consent of 21 West to file the petition, the alleged failure to provide 21 West with notice of the petition, and a description of the prepetition events leading to the filing of the petition.  However, these events do not constitute cause for conversion or dismissal.

Pursuant to 11 U.S.C. § 1112(b), "on request of a party in interest, and after notice and a hearing," the Court can dismiss a Chapter 11 case or convert it to a case under Chapter 7 so long as cause is established.  The burden is on the moving party to establish cause, and the Bankruptcy Court has wide discretion in determining whether "cause" exists to dismiss or convert the case.  *In re BH S&B Holdings*, LLC, 439 B.R. 342, 346 (Bankr S.D.N.Y. 2010)

(citing *In re Kholyayka,* No. 08-10653 (DWS), 2008 WL 3887653, at *5 (Bankr. E.D. Pa. Aug. 20, 2008)). Once the Court finds that cause exists, the Court must dismiss or convert the case, or appoint an operating trustee pursuant to 11 U.S.C. § 1104(a) unless (i) there are "unusual circumstances" that would warrant denial of the motion, and (ii) the debtor or any other party in interest establishes that there is a reasonable likelihood of plan confirmation and justification for and seasonable cure of the grounds giving rise to "cause."  11 U.S.C. § 1112(b).

There are sixteen enumerated circumstances constituting "cause" under this section, but the list is not exhaustive, according to applicable legislative history.  H.Rep. 595, 95th Cong., 1st Sess. 404 (1977).  The Second Circuit and lower courts in this Circuit recognize that petitions filed in bad faith are subject to dismissal or conversion.  *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997);  *In re AdBrite Corp.* 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (*citing In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 985 (Bankr. N.D.N.Y. 1988)).  Yet, it is settled that "dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re Century/ML Cable Venture,* 294 B.R. 9, 34 (Bankr. S.D.N.Y. 2009) (*quoting In re Syndicom Corp.,* 268 B.R. 26 (Bankr. S.D.N.Y. 1997)).  See also *In re G.S. Distrib., Inc.,* 331 B.R. 552, 566 (Bankr S.D.N.Y. 2005) ("[C]ourts should dismiss on bad faith grounds sparingly, 'with great caution . . . '") (other citations omitted)).

In the Second Circuit, a petition is subject to dismissal for bad faith "if *both* objective futility of the reorganization process *and* subjective bad faith in filing the petition are found." *In re General Growth Properties, Inc.*, 409 B.R. 43, 56 (Bankr. S.D.N.Y. 2009) (emphasis in original, internal quotations and citations omitted).  The Second Circuit Court of Appeals has stated that in order to establish that reorganization is futile, the moving party has the burden of

proof that "from the date of filing the debtor has no reasonable probability of emerging from the bankruptcy proceeding and no realistic chance of reorganizing." *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d at 1310.  Based on the facts of this case, there is no basis to find that the reorganization is futile.  First, this Court has determined that the Debtor had the authority to file the petition.  Second, the Debtor has filed a proposed plan with the Court and has complied with Bankruptcy Code requirements applicable to Chapter 11 debtors.  21 West does not point to any other evidence of objective futility and since 21 West cannot establish this prong, the Motion must be denied.

Even if 21 West were successful in arguing that the Debtor's reorganization efforts are objectively futile, there is insufficient evidence of subjective bad faith on the part of the Debtor to warrant dismissal of the case.  "The subjective bad faith inquiry is designed to insure that the [debtor] actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *Carolin Corp. v. Miller*, 886 F.2d 693, 702 (4th Cir. 1989) (citing *In re Victory Constr. Corp.*, 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981)).  In this case, the Debtor has filed a proposed liquidating plan.  While reorganization is an appropriate use of Chapter 11, the Bankruptcy Code also authorizes liquidating plans pursuant to § 1123(b)(4) ("[A] plan may . . . provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests . . . ").  As courts in this circuit have recognized, "reorganization encompasses rehabilitation, and may include liquidation" *In re Copy Crafters Quickprint, Inc.*, 92 B.R. at 985-86 (citations omitted); *see also In re Coffee Cupboard, Inc.*, 119 B.R. 14, 19 (E.D.N.Y. 1990), and *In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 654 (Bankr. S.D.N.Y. 1995)  (Liquidating plans are permitted in Chapter 11 proceedings).  So long as the

liquidating plan serves a valid bankruptcy purpose, which the Debtor's proposed plan does, the intent to liquidate assets in an orderly process is not evidence of bad faith.  The fact that prepetition, the members of the Debtor disagreed over the course of conduct to take with respect to Amalgamated does not render this a bad faith filing.  To the contrary, the Debtor acted to preserve the value of its assets, after negotiations with Amalgamated failed to resolve the issues between the parties.  The possibility that the members of MM Sag Harbor may be released from their personal guaranties to Amalgamated, and Amalgamated may be the successful bidder at a subsequent auction of the Property does not support a finding that the Debtor filed this petition in bad faith. Therefore, there is insufficient evidence of objective and subjective bad faith on the part of the Debtor to warrant dismissal or conversion of this case.

### *Conclusion*

For the foregoing reasons, the Motion is denied.  21 West has failed to establish cause to dismiss the Debtor's case pursuant to Bankruptcy Code § 1112(b).  An order consistent with this Memorandum Decision shall be entered forthwith.

Dated:  Central Islip, New York
April  30, 2013                                           By: */s/ Robert E. Grossman*
                                                                      Robert E. Grossman,
                                                                      United States Bankruptcy Judge